1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   ANA KLINE,                              No.  2:19-cv-02387-MCE-KJN

12              Plaintiff,

13        v.                                 **MEMORANDUM AND ORDER**

14   MENTOR WORLDWIDE, LLC; NUSIL,
     LLC; NUSIL TECHNOLOGY LLC; and
15   DOES 1-100, inclusive,

16              Defendants.

17   EMMA LEE NICHOLS,                       No.  2:19-cv-02391-MCE-KJN

18              Plaintiff,

19        v.

20   MENTOR WORLDWIDE, LLC; NUSIL,
     LLC; NUSIL TECHNOLOGY LLC; and
21   DOES 1-100, inclusive,

22              Defendants.

23

24        Plaintiffs Emma Lee Nichols, Korin Roberston, Caroline VanSkaik, and Ana Kline

25   originally filed this action in Sacramento County Superior Court, claiming injuries from

26   receiving Defendant Mentor Worldwide, LLC's ("Defendant") MemoryGel Silicone Gel

27   Breast Implants ("the Implants").  Def. Mem. P. &. A. in Supp. Mot. Dismiss Pls.' Compl.,

28   ECF No. 6, at 10 fn. 1.  Defendant removed the action to the Eastern District of

                                        1

California on May 15, 2019.  Id.  The four Plaintiffs subsequently moved to remand the action back to the state court.  Id.  This Court granted Plaintiffs' Motion to Remand on July 19, 2019, and found that the former Defendant NuSil, LLC fraudulently joined the action.  Id.  After remand to the state court, Defendant moved to sever the four Plaintiffs' claims such that they had to be prosecuted separately.   The state court granted that motion.  Id.  Thereafter, Defendant re-removed the action to this Court on November 26, 2019.  Id.  Once back in the Eastern District of California, separate cases were set up for each of the four Plaintiffs, and the Court determined the cases were related pursuant to Local Rule 123.  Def. Notice of Related Cases, ECF No. 2, at 1.[1]

Presently before the Court is Defendant's Motion to Dismiss the Complaint as it pertains to related Plaintiffs Ana Kline and Emma Lee Nichols (collectively, "Plaintiffs") on grounds that each allegation contained therein is preempted.  Def. Mem. P. &. A. in Supp. Mot. Dismiss Pls.' Compl. at 9.  Defendant further argues, to the extent Plaintiffs' claims survive preemption, that their allegations do not meet pleading standards.  Id.  For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.

**BACKGROUND**[2]

In 1976, Congress passed the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act ("FDCA").  Compl. at ¶ 33.  The MDA classified medical devices into three categories of increasing regulation: Class I devices receive the least oversight, Class II devices adhere to "special controls" like performance standards, and Class III devices undergo rigorous premarket review and approval.  Id. at ¶ 34.  Silicone gel-filled breast implants originally fell within the purview of Class II.  Id. at ¶ 35.  However, the U.S. Food and Drug Administration ("FDA") re-categorized silicone

---

[1] Each of the now severed actions continues to rely on the initial operative complaint filed collectively on their behalf in state court.

[2] The following of recitation of facts is taken, sometimes verbatim, from Plaintiffs' complaint.  ECF No. 1.

gel-filled breast implants as Class III devices after consumers reported a number of adverse events.  Id.

Defendant sought pre-market approval ("PMA") of the Implants and requested the FDA allow clinical testing pursuant to an investigational device exemption ("IDE").  Id. at ¶ 43–44.  An IDE device is subject to immense scrutiny and detailed procedures to ensure its safety.  Id. at ¶ 45.  Around 1992, the FDA approved Defendant's IDE on the basis that Defendant conduct three studies—an adjunct study, a core study, and an IDE study.  Id. at ¶ 46.  On December 12, 2003, Defendant submitted an official request to the FDA to allow PMA for the Implants.  Id. at ¶ 59.  Three years later, in November 2006, the FDA approved Defendant's PMA.  Id. at ¶ 60.  However, a condition of PMA approval required that Defendant conduct six post-approval studies to further ensure the safety and effectiveness of the Implants.  Id. at ¶ 61.  Additionally, Defendant had to report any significant new information about the Implants to the FDA and update the Implants' labeling to reflect the results of the studies.  Id. at ¶ 65.

Plaintiff Kline received the Implants on July 30, 2007.  Id. at ¶ 20.  Following the procedure, Plaintiff Kline "developed pain and swelling of the breasts, seromas, fatigue, muscle pain and muscle weakness, swelling in the joints, joint pain, sensitivity to light, skin rashes, issues with her vision, numbness in her extremities, joint stiffness, dizziness, nausea, memory loss, shortness of breath, cognitive dysfunction, chest pain, migraines, itching, night sweats, hair loss, and pulsatile tinnitus."  Id. at ¶ 21.

Plaintiff Nichols received the Implants in her right breast in August 2005 and in her left breast in 2014.  Id. at ¶ 23.  Between 2005 and 2017, Plaintiff Nichols had her right breast Implants replaced several times; the second replacement, notably, ruptured.  Id. at ¶ 25.  After Plaintiff Nichols received the Implants, she developed "sharp pain in the breasts, tenderness, chronic fatigue, and autoimmune dysfunction."  Id. at ¶ 24.

Plaintiffs subsequently filed their Complaint on May 6, 2019, and alleged three causes of action.  Id. at 5.  First, Plaintiffs claim Defendant negligently manufactured the Implants and negligently failed to warn about Implants' risks.  Id. at ¶¶ 109, 134.  (First

3

1  Cause of Action).  Next, Plaintiffs allege Defendant is strictly liable for failing to warn

2  about the Implants' risks.  Id. at ¶ 157 (Second Cause of Action).  Finally, Plaintiffs

3  assert Defendant is strictly liable for the Implants' alleged manufacturing defects.  Id. at

4  ¶ 208 (Third Cause of Action).  Defendant's Motion to Dismiss Plaintiffs' Complaint in its

5  entirety followed and is now before this Court for adjudication.

6

7  **STANDARD**

8

9  On a motion to dismiss for failure to state a claim under Federal Rule of Civil

10  Procedure 12(b)(6), all allegations of material fact must be accepted as true and

11  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

12  Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

13  statement of the claim showing that the pleader is entitled to relief" in order to "give the

14  defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

15  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

16  47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

17  detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

18  his entitlement to relief requires more than labels and conclusions, and a formulaic

19  recitation of the elements of a cause of action will not do."  Id. (internal citations and

20  quotations omitted).  A court is not required to accept as true a "legal conclusion

21  couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

22  (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right

23  to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan

24  Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

25  that the pleading must contain something more than "a statement of facts that merely

26  creates a suspicion [of] a legally cognizable right of action.")).

27  Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

28  assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

4

1   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

2   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

3   the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles

4   Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

5   facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . .

6   have not nudged their claims across the line from conceivable to plausible, their

7   complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed

8   even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

9   recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

10  232, 236 (1974)).

11      A court granting a motion to dismiss a complaint must then decide whether to

12  grant leave to amend.  Leave to amend should be "freely given" where there is no

13  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

14  to the opposing party by virtue of allowance of the amendment, [or] futility of the

15  amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

16  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

17  be considered when deciding whether to grant leave to amend).  Not all of these factors

18  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

19  carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

20  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

21  "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,

22  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

23  1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

24  1989) ("Leave need not be granted where the amendment of the complaint . . .

25  constitutes an exercise in futility . . . .")).

26  ///

27  ///

28  ///

1

**ANALYSIS**

2

3      The MDA contains an express preemption clause which states:

4          (a)    General rule. Except as provided in subsection (b), no
           State or political subdivision of a State may establish or
5          continue in effect with respect to a device intended for human
           use any requirement—
6

7              (1)    which is different from, or in addition to, any requirement
               applicable under this chapter [21 USCS §§ 301 et seq.] to the
8              device, and

9              (2)    which relates to the safety or effectiveness of the device
               or to any other matter included in a requirement applicable to
10             the device under this chapter [21 USCS §§ 301 et seq.].

11   21 U.S.C.S. § 360k.

12      The Supreme Court of the United States established a two-prong test to

13   determine whether the MDA expressly preempts a state law claim.  Riegel v. Medtronic,

14   Inc., 552 U.S. 312, 321–22 (2008).  Courts must ask: first, did the Federal Government

15   establish requirements specific to the device at issue; and second, are the alleged state-

16   law claims based on requirements which are "'different from, or in addition to,' the federal

17   ones, and that relate to safety and effectiveness."  Id. (quoting 21 U.S.C.S. § 360k(a)).

18   In other words, a state-law claim that parallels the federal requirements avoids express

19   preemption.  Stengel v. Medtronic Inc., 704 F.3d 1224, 1228 (9th Cir. 2013) ("[T]he MDA

20   does not preempt a state-law claim for violating a state-law duty that parallels a federal-

21   law duty under the MDA.").  A state may thus provide a "damages remedy for claims

22   premised on a violation of FDA regulations" because the duties "'parallel,' rather than

23   add to, federal requirements."  Riegel, 552 U.S. at 330 (citing Medtronic, Inc. v. Lohr,

24   518 U.S. 470, 495 (1996)).  If both prongs are met, then the MDA expressly preempts

25   the claim.

26      On the other hand, the MDA impliedly preempts "claims that are based solely on

27   violations of federal requirements, and not on state law requirements that could exist

28   ///

6

1  independently of any federal rules."  Martin v. Medtronic, Inc., No. 1:15-cv-00994-DAD-

2  MJS, 2017 U.S. Dist. LEXIS 169996, at *9 (E.D. Cal. Oct. 13, 2017) (citing Buckman

3  Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 352–53 (2001)).  The MDA's implied

4  preemption authority rests in 21 U.S.C.S. § 337, which requires any action to enforce or

5  restrain violations of the MDA be in the name of the United States.  21 U.S.C.S. § 337.

6  As such, "a claim that 'exists solely by virtue' of federal requirements (such as a claim for

7  fraud in submissions to the FDA during the premarket approval process) is impliedly

8  preempted by the MDA . . . ."  De La Paz v. Bayer HealthCare LLC, 159 F. Supp. 3d

9  1085, 1091 (N.D. Cal. 2016) (quoting Buckman Co., 531 U.S. at 349).

10       The demanding requirements to escape both express and implied preemption

11  create a "narrow gap" through which state-law claims must fit.  "The plaintiff must be

12  suing for conduct that violates the FDCA (or else his claim is expressly preempted by

13  § 360k(a)), but the plaintiff must not be suing because the conduct violates the FDCA

14  (such a claim would be impliedly preempted under Buckman)."  Perez v. Nidek Co.,

15  711 F.3d 1109, 1120 (9th Cir. 2013) (emphases in original) (quoting Bryant v. Medtronic,

16  Inc., 623 F.3d 1200, 1204 (8th Cir. 2010)).

17       In addition to avoiding preemption, a plaintiff bringing a parallel claim based on a

18  violation of FDCA requirements "must allege (1) the violation of a specific federal

19  requirement applicable to the device, and (2) a causal nexus between the violation and

20  the alleged injury."  See Martin 2017 U.S. Dist. LEXIS 169996, at *9.  As shown below,

21  all of Plaintiffs' causes of action fail to escape either MDA's preemption or the parallel

22  claim pleading standard.

23       **A.    Plaintiffs' First and Second Causes of Action for**
          **Negligence/Negligence Per Se and Strict Products Liability Failure to**
24        **Warn Are Either Preempted or Fail the Applicable Pleading Standard**

25       The MDA codified a manufacturer's duty to submit reports of adverse events to

26  the FDA, such as: "reportable death, serious injury, [] malfunction . . . [or] requires

27  remedial action to prevent an unreasonable risk of substantial harm to the public

28  health . . . ."  21 C.F.R. § 803.10; Stengel, 704 F.3d at 1226–27.  California law also

imposes a parallel "general duty of reasonable care on manufacturers, and provides a strict products liability cause of action for failure to warn."  Martin, 2017 U.S. Dist. LEXIS 169996, at *21.  A cognizable strict products liability failure to warn claim "alleges that the defendant failed to adequately warn of a known or knowable risk where that failure caused the plaintiff's injuries."  Id. (quoting Hawkins v. Medtronic, Inc., No. 1:13-cv-00499 AWI SKO, 2014 U.S. Dist. LEXIS 11779, at *13 (E.D. Cal. Jan. 30, 2014)).

Plaintiffs allege, in both strict liability and negligence/negligence per se causes of action, that Defendant breached its duty under federal law, and parallel California law, by not reporting adverse events to Plaintiffs, Plaintiffs' physicians, and the FDA.  Compl. at ¶¶ 113, 119, 121, 129, 157, 163, 179.

### 1. The Failure to Warn Plaintiffs and Plaintiffs' Physicians Claim is Expressly Preempted

Defendant's Implants clearly satisfy Riegel's first prong.  A Class III device subjected to PMA always satisfies the first prong because PMA imposes requirements specific to an individual device.  Riegel, 552 U.S. at 322–23.  Since neither party disputes that the Implants are a Class III device, the analysis becomes whether California's laws impose parallel requirements to the federal laws.

Defendant correctly argues that the MDA expressly preempts Plaintiffs' claims that Defendant failed to warn Plaintiffs and Plaintiffs' physicians about the Implants.  Def. Mem. P. &. A. in Supp. Mot. Dismiss Pls.' Compl. at 8.  The MDA requires—pursuant to acquiring PMA—that Defendant report adverse events to the FDA.  21 C.F.R. § 803.10(c).  Additionally, once the FDA granted the Implants' PMA, the MDA mandates that Defendant continue to report individual adverse events to the FDA as well.  Id.; Stengel, 704 F.3d 1226–27.  California law, on the other hand, imposes a general duty of reasonable care on manufacturers.  Martin, 2017 U.S. Dist. LEXIS 169996, at *21. Consequently, Plaintiffs attempt to impose requirements on Defendant "'different from, or in addition to,' the federal ones" through California's negligence and strict products liability law because, unlike the MDA, they advance a requirement that manufacturers

8

warn Plaintiffs and Plaintiffs' physicians directly.  <u>See</u> Compl. at ¶¶ 119, 163, ("Mentor had a duty to exercise reasonable care in adequately warning Plaintiffs and Plaintiff's treating physicians about the dangers of [Implants] . . . . .  Mentor failed to adequately warn physicians and patients implanted with the product, including Plaintiffs, of these potentially serious and harmful risks.").  As such, the MDA expressly preempts Plaintiffs' failure to warn claims with regards to warning Plaintiffs and Plaintiffs' physicians.  <u>See</u> <u>Martin</u>, 2017 U.S. Dist. LEXIS 169996, at *21 (finding that plaintiffs avoided express preemption by amending the complaint to remove "a failure to report [adverse events] directly to medical providers and consumers.");  <u>see also</u> <u>Stengel</u>, 704 F.3d 1235 ("As a result, any attempt to predicate the Stengels' claim on an alleged state law duty to warn doctors directly would have been expressly preempted under 21 U.S.C. § 360k . . . .").  Thus, as Plaintiffs concede in their opposition, only Defendant's alleged failure to warn the FDA of adverse events survives express preemption.  <u>See</u> Pls.' Opp. Def. Mot. Dismiss, ECF No. 15, at 15 ("As such, Plaintiff's failure to warn claims alleging that Mentor failed to comply with its federal duty to report adverse events to the FDA are not preempted.").

### 2.     Plaintiffs' Failure to Warn the FDA Claim Survives Implied Preemption

Defendant further argues that any failure to warn the FDA claim is also subject to implied preemption.  Def. Mem. P. &. A. in Supp. Mot. Dismiss Pls.' Compl. at 9.  However, this argument fails as Plaintiffs' claim successfully squeezes through the narrow gap between express and implied preemption.  Plaintiffs' Complaint alleges that Defendant's conduct violated the FDCA, but did not rest solely on the FDCA violation since the Complaint also included state law violations.  <u>See</u> <u>Perez</u>, 711 F.3d 1109, 1119–20 (distinguishing the claim in <u>Perez</u> which rested solely on FDCA violations and Plaintiffs' current claim which alleges state law violations based on FDCA violations); Compl. at ¶¶ 113, 115, 164, 169; Pls.' Opp. Def. Mot. Dismiss at 17.  Plaintiffs' failure to warn the FDA claim consequently survives implied preemption.

9

**1.  Plaintiffs' Failure to Warn the FDA Claim is Insufficiently Plead**

Finally, Defendant argues that even if Plaintiffs' claim survives preemption, the claim is nonetheless insufficiently plead.  Def. Mem. P. &. A. in Supp. Mot. Dismiss Pls.' Compl. at 9.  The Court agrees as Plaintiffs only satisfy the first parallel pleading prong. Although Plaintiffs identify federal requirements specific to the Implants, the Complaint merely contains general allegations that Defendant failed to report adverse events to the FDA without any specific examples.  See generally Compl.  Courts routinely require more than general allegations to find a causal nexus.  See Hawkins, 2014 U.S. Dist. LEXIS 11779, at *22 (finding that general allegations of failing to report adverse events to the FDA is not enough to support a causal nexus) and Martin, 2017 U.S. Dist. LEXIS 169996, at *18 ("plaintiff has not alleged facts identifying the nature of any such adverse events or addressing how any such failure to report ultimately caused plaintiff's injury."); see also Weaver v. Ethicon, Inc., No. 16cv257-GPC(BGS), 2016 U.S. Dist. LEXIS 169592, at *18–19 (S.D. Cal. Dec. 6, 2016) (granting defendant's motion to dismiss plaintiffs' failure to warn claim because the plaintiffs did not allege "specific instances of actual adverse events.").

Plaintiffs rebut Defendant's argument by analogizing the current litigation to the issue in Eidson v. Medtronic, Inc., 40 F. Supp. 3d 1202, 1233 (N.D. Cal. May 13, 2014). Pls.' Opp. Def. Mot. Dismiss at 17.  In Eidson, the court initially dismissed Eidson's claims because although the complaint specified one specific adverse event that Medtronic did not report, Eidson did not specify the date on which the adverse event occurred.  Eidson, 40 F. Supp. 3d at 1233.  Therefore, the court concluded no causal nexus existed.  Id.  Eidson subsequently amended her complaint to include a study that showed "by April 2008, defendants had reported only 262 of an estimated 50,000-250,000 adverse events . . . ."  Id.  The court found that the study, along with other facts about specific adverse events Medtronic failed to report, cured the deficiencies in the original complaint.  Id. at 1234.  Thus, Eidson's first amended complaint successfully showed a causal nexus at the pleading stage.  Id.

1    Here, Plaintiffs' argument is inapposite.  While the <u>Eidson</u> amended complaint

2    alleged specific instances of unreported adverse events along with a widespread study

3    concluding systemic underreporting, Plaintiffs' Complaint here does not include any

4    specific instances of failing to report adverse events to the FDA.  <u>See generally</u> Compl.

5    Plaintiffs at most allege a very general failure by Defendant to report any adverse events

6    to the FDA.  <u>Id.</u>  Plaintiffs must do more than provide conclusory allegations linking

7    Defendant's alleged failure to warn the FDA and Plaintiffs' injuries.  <u>Twombly</u>, 550 U.S.

8    at 555.

9    In conclusion, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' First

10   Cause of Action, to the extent it alleges negligence/negligence per se failure to warn,

11   and Plaintiffs' Second Cause of Action for strict products liability failure to warn, with

12   leave to amend.  Next, the Court considers Plaintiffs' manufacturing causes of action.

13   **B.    Plaintiffs' First and Third Causes of Action, to the Extent they Allege Negligence/Negligence Per Se and Strict Products Liability**

14   **Manufacturing Defects, Fail Parallel Claim Pleading Requirements**

15   The parallel pleading requirement necessitates that Plaintiffs allege both a

16   violation of a federal requirement specific to the Implants and a causal nexus between

17   the alleged violation and injury.  <u>See Martin</u>, 2017 U.S. Dist. LEXIS 169996, at *9.  "To

18   state a manufacturing defect claim by way of either a strict products liability or a

19   negligence cause of action, a plaintiff must allege, and eventually prove, a particular

20   manufacturing defect which caused injury to plaintiff."  <u>Id.</u> (collecting cases).  Here, as

21   Defendant argues in the Motion to Dismiss, Plaintiffs' Complaint fails to identify a specific

22   manufacturing defect.  Def. Mem. P. &. A. in Supp. Mot. Dismiss Pls.' Compl. at 22.

23   Plaintiffs allege, in both the negligence and strict products liability claims set forth

24   in the First and Third Causes of Action, that Defendant manufactured the Implants in

25   violation of federal, and parallel California, law.  Generally, Plaintiffs contend that

26   Defendant violated 21 C.F.R. § 820.30 and parallel California law by:

27   ///

28   ///

11

1
2
3
4
5
6
7
8
9

> manufacturing [Implants] that differed from the specifications agreed to by the FDA; manufacturing [Implants] using materials and components which differed from those approved by the FDA; failing to follow good manufacturing practices during the manufacture of its [Implants]; failing to properly meet the applicable standard of care by not complying with applicable federal regulations and failing to adhere to the manufacturing protocols approved by the FDA . . . negligently incorporating components and/or materials into its [Implants] that could not stand up to normal usage and/or which differed from those which were commercially reasonable and/or failing to use the components and/or materials approved by the FDA; failing to exercise reasonable care in inspecting and testing of the product; and failing to exercise reasonable care in its manufacturing, quality control, and quality assurance processes.

10   Compl. at ¶¶ 135, 212.

11          The most specific example Plaintiffs provide of an alleged manufacturing defect is

12   that the Implants had "porous or weak containment in the Implant shell . . . inconsistent

13   with specifications and conditions of the FDA's Quality System Regulations . . . ." Id. at

14   ¶ 212.  However, this generalized allegation is not enough.  Plaintiffs must allege specific

15   examples of manufacturing defects to survive the pleading and preemption standards.

16   For example, in Prudhel v. Endologix, Inc., No. CIV. S-09-0661 LKK/KJM, 2009 U.S.

17   Dist. LEXIS 64402, at *22–23 (E.D. Cal. July 8, 2009), the Court found that Prudhel

18   adequately plead a strict products liability manufacturing defect claim against Endologix,

19   Inc.  The claim met the specificity standards because it alleged the particular device

20   manufacturing defect: "the tip or cap of the stent's delivery device became disengaged

21   during insertion into decedent.  The plaintiffs further alleged that prior manufacturing lots

22   of the stents had been recalled because 'the tip may separate from the catheter sheathe

23   inner core during insertion of the graft.'" Id.  Consequently, Prudhel's strict products

24   liability manufacturing defect claim survived the Motion to Dismiss.  Id.

25          Plaintiffs' claims here do not rise to the same level of specificity as in Purdhel.

26   The Complaint alleges Defendant used unknown materials to manufacture the Implants

27   and referenced only general FDA regulations.  Cf. Money v. Johnson & Johnson,

28   No. 15-cv-03213-LB, 2016 U.S. Dist. LEXIS 70808, at *15–16 (N.D. Cal. May 31, 2016)

1  (holding that plaintiff adequately plead a parallel manufacturing defect claim by citing

2  specific PMA manufacturing procedural requirement violations, tying the violations to the

3  alleged injuries, identifying the specific defect on the device, and showing the defect

4  existed when the device left the defendants hands); Compl. at ¶ 135.  Conclusory

5  allegations fail the parallel claim standard.  See Ebrahimi v. Mentor Worldwide LLC,

6  804 Fed. Appx. 871, 872 (9th Cir. 2020) (reiterating that more is required for a

7  successful manufacturing defect cause of action than the suggestion that because a

8  particular plaintiff's breast implant was defective, the defendant therefore failed to

9  comply with FDA regulations); see also Weaver, 2016 U.S. Dist. LEXIS 169592, at *13

10  (highlighting that the court dismissed plaintiff's manufacturing defect causes of action

11  because the claims lacked "facts as to how defendants violated these provisions.").

12         Plaintiffs rely on two out-of-circuit cases to argue that the manufacturing defect

13  causes of action survive preemption and parallel pleading requirements.  Pls.' Opp. Def.

14  Mot. Dismiss at 16.  First, Plaintiffs argue that the Seventh Circuit case, Hofts v.

15  Howmedica Osteonics Corp., 597 F. Supp. 2d 830, 836 (S.D. Ind. Feb. 11, 2009),

16  establishes that manufacturing defect claims survive preemption if based on violations of

17  FDA requirements rather than failing to exceed the FDA requirements.  Pls.' Opp. Def.

18  Mot. Dismiss at 16.  However, the court in Hofts found that the plaintiff's complaint

19  alleged facts that weaved together manufacturing defects with violations of specific FDA

20  requirements.  Hofts, 597 F. Supp. 2d at 836.  In the present case, Plaintiffs fall short—

21  they merely allege that Defendant used unknown materials in violation of general FDA

22  requirements.  See Compl. at ¶¶ 135, 208.  Thus, Plaintiffs first analogy to the caselaw

23  fails.  Plaintiffs go on to contend, however, that a second case, from the Eighth Circuit,

24  also provides authority that the manufacturing defect claims survive preemption and

25  pleading requirements.  Warren v. Howmedica Osteonics Corp., No. 4:10 CV 1346 DDN,

26  2010 U.S. Dist. LEXIS 129662, at *6 (E.D. Mo., Dec. 8, 2010); Pls.' Opp. Def. Mot.

27  Dismiss at 16.  Yet, similar to Hofts, the court found that the plaintiff sufficiently plead

28  facts to support a plausible claim for relief because the causes of action intertwined

13

1   specific FDA violations with the device defects.  <u>Warren</u>, 2010 U.S. Dist. LEXIS 129662,

2   at *17–18.  Additionally, the Eighth Circuit precedent allows a lower pleading standard

3   for valid parallel claims since it permits a plaintiff to allege general violations of FDA

4   regulations.  <u>Id.</u>  The Ninth Circuit's precedent, however, requires more; namely, a

5   specific manufacturing defect that violated a federal regulation exclusive to implants with

6   a causal nexus to the alleged injury.  <u>See</u> <u>Martin</u>, 2017 U.S. Dist. LEXIS 169996, at *9.

7   Here, Plaintiffs' conclusory allegations about unspecified defects and general FDA

8   violations do not rise to the level the Ninth Circuit requires for parallel claims.  Compl. at

9   ¶¶ 135, 212.

10        Therefore, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' First and

11   Third Causes of action, to the extent they allege negligence/negligence per se and strict

12   products liability manufacturing defects, with leave to amend.

13

14                                      **CONCLUSION**

15

16        For all the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 6, is

17   GRANTED in its entirety, with leave to amend.[3]  Should Plaintiffs wish to rectify the

18   deficiencies of the First, Second, and Third Causes of Action, they may do so by filing a

19   First Amended Complaint not later than twenty (20) days following the date the

20   Memorandum and Order is electronically filed.  Failure to amend within those time

21   parameters will result in dismissal of this action, with prejudice and without further notice

22   to the parties.

23        IT IS SO ORDERED.

24   DATED:  March 29, 2021

25   _____

26   MORRISON C. ENGLAND, JR.
     SENIOR UNITED STATES DISTRICT JUDGE

27   _____

28        [3] Having determined that oral argument was not of material assistance, the Court submitted this
     matter on the briefs in accordance with E.D. Local Rule 230(g).

14